**STATE of Missouri, Respondent,**

v.

**Lester KING, Appellant.**

No. 50245.

Supreme Court of Missouri,

Division No. 2.

June 8, 1964.

Lester King, pro se.

Thomas F. Eagleton, Atty. Gen., Robert R. Northcutt, Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Judge.

This appeal was taken from an order of the Circuit Court denying a motion to vacate a judgment and sentence of 15 years for first degree robbery. The motion was filed under our Criminal Rule 27.26, V.A.M.R. As has been stated on numerous occasions, such a motion constitutes a collateral attack on the judgment and defects

must be shown which render the judgment essentially void. State v. Turner, Mo., 353 S.W.2d 602; State v. Cerny, 365 Mo. 732, 286 S.W.2d 804. The appeal was filed here pursuant to our order permitting a special notice of appeal to be filed out of time. A free transcript has been furnished to petitioner as an indigent. The motion was denied on May 31, 1963, upon consideration of the motion and exhibits.

The facts leading up to this proceeding are, in substance, as follows: petitioner was charged by information filed in the Circuit Court of Phelps County with first degree robbery by means of a dangerous and deadly weapon, actually the holdup of a liquor store; he was granted a change of venue to Cole County, where he and his counsel signed and filed a written waiver of jury trial pursuant to Criminal Rule 26.01 and Art. I, § 22(a) of the V.A.M.S. Constitution; with the Court's assent, trial was had without a jury. Defendant was represented by counsel. On November 17, 1955, after hearing the evidence and arguments, the Court filed declarations of law, found the defendant guilty as charged, and assessed his punishment at 15 years in the penitentiary; the Court granted defendant 30 days in which to file motion for a new trial. The record shows no such motion. On January 3, 1956, defendant was granted allocution, judgment was entered and sentence pronounced.

In considering the substance of the present motion to vacate, we shall consider also the affidavits attached and two presubmission "Motions for Appropriate Relief." Defendant has briefed this matter pro se, citing many authorities ranging from Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L. Ed.2d 837 (dealing with the basic rights on habeas corpus) to a civil case in Ohio dealing with proximate and intervening causes.

Defendant now contends: (1) That while in jail at Rolla on three burglary charges he escaped and traveled to Kansas; that he was "kidnapped" in Topeka on January 15, 1955, and brought back to Rolla, from whence he took a change of venue to Cole County; that he was there released on bond but was *later* rearrested in Rolla (April 26, 1955) and charged with a robbery committed in that county on April 26, 1955; that he also obtained a change of venue to Cole County on that charge, with the results as already stated; that "manifestly movant's existing venue and jurisdiction remains yet in the State of Kansas * * *." (2) That after his conviction and on January 3, 1956 (the date of his allocution and sentence) he was "denied the reappointment of another attorney" to appeal his conviction, pursuant to his motion. The transcript shows no such motion, no request for any such appointment, and no reference to a desire for an appeal; in fact, no motion for new trial was filed; he also alleges, rather vaguely, that his counsel did not represent him properly at the trial and did not procure the necessary witnesses. (3) That the information was and is invalid because Jay White, the Prosecuting Attorney of Phelps County, had employed his brother, Zane White, as Assistant Prosecuting Attorney in violation of Art. 7, § 6, Mo.Const., had forfeited his office, and that he was thus unauthorized to sign and verify the information. (4) That there were inconsistencies in the testimony of the State's witnesses at his trial, that one Bessie Yowell (convicted elsewhere of the same holdup) testified under duress, and that the proof was not sufficient for a conviction. Defendant has submitted an affidavit of one Everett Yowell, stating that King was drunk and unconscious in the back seat of a car at the time of the robbery.

Before considering the merits of these contentions, we note here the prior petitions filed by this defendant, as they have some bearing on the present appeal. All of these were filed as an indigent by leave of court. On June 13, 1956, he filed petition for habeas corpus in this court, raised the so-called question of "nepotism," alleged perjury at his trial, and alleged improper representation by counsel at his trial and there-

after. The writ was denied on July 9, 1956. Another petition for habeas corpus was filed on February 21, 1957, and denied on March 11, 1957. On December 27, 1957, he filed another such petition specifically presenting the alleged nepotism and various irregularities which he claimed had occurred at his trial. This was denied on January 13, 1958, and on April 28, 1958, the United States Supreme Court denied certiorari. In the meantime, and on August 6, 1957, a petition for habeas corpus was denied in the United States District Court for the Western District of Missouri, for the reason, among others, that his complaints were "subject to regulation by the State Court." Another petition for habeas corpus has been denied in this court on February 7, 1964, during the pendency of the present appeal. A petition for habeas corpus was denied by the Circuit Court of Cole County on September 9, 1959; in or about April, 1956, such a petition was also denied, it being alleged therein that defendant was denied adequate representation by counsel. Opinions in subsequent and additional proceedings against this defendant appear at 372 S.W.2d 857 (defendant being represented there by the same counsel who represented him at the 1956 trial), and at 375 S.W.2d 34, although those are of no particular significance here.

■ The so-called "kidnapping" of defendant in Topeka after he escaped from the Phelps County jail is of no significance whatever here. The offense which resulted in his robbery conviction was committed in Phelps County on April 26, 1955, *after* he had been returned to Missouri, had procured a change of venue, had been released on bond in Cole County and had voluntarily returned to Phelps County and there tangled *anew* with the law. If there was any "kidnapping," which from the record seems most improbable, that act certainly would not follow him through life like part of a "chain of title" and invalidate all future criminal charges. Moreover, our transcript contains copies of certain extradition papers for this defendant which, although apparently incomplete, indicate that extradition was applied for. Defendant has presented these by attaching them to his present motion as exhibits, for some unexplained reason.

■ The assertion that defendant requested and was denied counsel to represent him upon an appeal is not corroborated in any respect by the record. Also, nothing in the record indicates that defendant expressed any desire to appeal, which, of course, he could have done pro se. We are convinced that the able and experienced trial judge would have not only permitted such a step, but would have aided him. The fact that no motion for new trial was filed tends to negative any desire for an appeal. The courts of Missouri have for generations furnished appointed trial counsel to all indigent defendants in felony cases, but not until the amendment of Criminal Rule 29.01 on July 9, 1963, did we require the appointment of counsel to represent such defendants upon appeal. And the decisions of the Supreme Court of the United States made no such requirement until approximately the same time. However, this court has for many, many years reviewed independently and on the merits all meritorious assignments of error raised in motions for new trial in felony cases, as well as the sufficiency of the formal parts of the record. State v. Archer, Mo., 328 S.W.2d 661; State v. Hernandez, Mo., 325 S.W.2d 494; State v. Wilson (1909), 223 Mo. 173, 122 S.W. 671. Here the record belies the truth of the rather vague suggestion that the defendant was denied "reappointment of another Attorney to defend him and appeal the Conviction * * *," and no such appointment was then required.

■■ Defendant raises again, as he has in at least two of his prior proceedings (June, 1956 and December, 1957), the contention that the information upon which he was convicted was invalid because the prosecuting attorney had been guilty of nepotism and had forfeited his office, citing Article 7, § 6, Mo.Const. A petition for

certiorari was denied by the United States Supreme Court following our denial of the petition of December, 1957. What we may say concerning this attack upon the information is by no means to be taken as an assumption that such an attack is permissible at this late date. Defendant cites principally the case of State ex inf. Norman v. Ellis, 325 Mo. 154, 28 S.W.2d 363. That was an original proceeding in quo warranto filed in this court. It was held that the Constitutional provision proscribing nepotism was self-executing in that legislation was not required to implement it, and that the officers who were Respondents had forfeited their offices. However, we have found no case where the acts of an officer, without a formal ouster, have been declared invalid. In referring to the asserted necessity of legislation and to the remedy already provided, the Court said in the Ellis case, 28 S.W.2d loc. cit. 366: "If anything more is required, section 3, article 6, of the Constitution, invests the Supreme Court with power to issue writs of habeas corpus, mandamus, quo warranto, etc. There a method *is* provided in the Constitution for removal of an officer who has forfeited his office under section 13 (nepotism by public officer), and section 7 could not apply on any theory." (Words in parentheses are ours.) And we note again that the Ellis case *was* a quo warranto proceeding. That opinion in itself would seem to constitute a recognition of quo warranto as the proper mode of adjudicating and effecting an ouster. To hold invalid all the acts of a public official because some third person asserts that he has committed an act which effects an ouster, would be intolerable. In State ex inf. McKittrick, Atty. Gen. v. Wymore, Pros. Atty., Banc, 343 Mo. 98, 119 S.W.2d 941, 119 A.L.R. 710, the court considered the Ellis case and the constitutional provision concerning nepotism (then Art. 14, § 13, Const.1875), and said, 119 S.W.2d loc. cit. 943, 945: " 'Quo warranto will also lie for the purpose of ousting an incumbent whose title to the office has been forfeited by misconduct or

other cause. And in such a case it is not necessary that the question of forfeiture should ever before have been presented to any court for judicial determination, but the court, having jurisdiction of the quo warranto proceeding, may determine the question of forfeiture for itself. The question must, however, be judicially determined before he can be ousted. * * *' The amendment provided no remedy for enforcement. Even so, we ruled that it was self-enforcing; that it pronounced a forfeiture upon commission of the act condemned, and that quo warranto was a proper remedy under said forfeiture." In State ex rel. McGaughey v. Grayston, Banc, 349 Mo. 700, 163 S.W.2d 335, loc. cit. 337, the Court said: "In this State a special judge is a judge de facto. Usually the authority of a de facto judge may be determined only in a quo warranto proceeding and not by way of prohibition to prevent him from doing an official act."

■ In such a proceeding the Court determines the question of forfeiture and if it is sustained, ouster is ordered. State ex inf. Taylor v. Cumpton, Banc, 362 Mo. 199, 240 S.W.2d 877, 883. And see generally, State, on Inf. of McKittrick v. Williams, Banc, 346 Mo. 1003, 144 S.W.2d 98. Chapter 531 of our statutes provides specifically for proceedings in quo warranto as a remedy for the usurpation, unlawful holding or unlawful execution of any office. Section 531.050 expressly provides for a judgment of ouster. We hold that in any event the acts of the Prosecuting Attorney of Phelps County were valid, pending formal ouster proceedings and an actual judgment of ouster. It is not claimed that there ever were any such proceedings, and the point made here is denied.

■ The remaining points concern matters which, if anything, were trial errors. These are stated to be: inconsistencies between testimony of the State's witnesses, supposed duress upon one witness (supported by a peculiar hearsay affidavit which states that the witness declined to sign an

affidavit herself), and the asserted insufficiency of the evidence to support a conviction. None of these matters is sufficient to support a collateral attack upon the judgment of conviction. State v. Turner, Mo., 353 S.W.2d 602.

The so-called "Motion(s) for Appropriate Relief" add little or nothing to all of the foregoing, except in that they seem to ask now for a complete transcript of the 1955 trial. They are denied. The judgment of the trial court is affirmed.

All of the Judges concur.